IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROLAND WILLIAM DANIELS,          )
                                 )
        Plaintiff,               )
                                 )
    v.                           )   Civ. No. 03-085-SLR
                                 )
CORRECTIONAL MEDICAL SERVICES,   )
INC., DR. KEITH IVENS, and       )
NURSE DOTTIE,                    )
                                 )
        Defendants.              )

---

Roland Williams Daniels, Delaware Correctional Center, Smyrna, Delaware.

Kevin J. Connors, Esquire of Marshall, Dennehey, Warner, Coleman and Goggin, Wilmington, Delaware. Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: August 4, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

I.  INTRODUCTION

On January 16, 2003, plaintiff, an inmate incarcerated at Delaware Correctional Center ("DCC") in Smyrna, Delaware, filed this action under 42 U.S.C. § 1983 alleging defendants violated his Eight Amendment right.  (D.I. 2)  Plaintiff's case has been closed and reopened twice since this time, the most recent reopening on October 16, 2003.  Waiver of service was received from defendant Correctional Medical Services ("CMS") on June 8, 2004.  The summons, United States Marshal 285 forms ("285 forms"), issued for defendants Dr. Keith Ivens and Nurse Dottie were returned, unexecuted, on June 22, 2004.  Neither Dr. Ivens nor Nurse Dottie were still employed by CMS at the time service was attempted, and the United States Marshal's Service was unable to locate them with the information provided by plaintiff.  (D.I. 20, 21)  Discovery concluded on Novmeber 15, 2004.

The court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331.  Currently before the court are plaintiff's four motions for representation by counsel (D.I. 30, 34, 41, 47), defendants Dr. Ivens and Nurse Dottie's motion to dismiss for insufficient service (D.I. 43), and defendant CMS's motion for summary judgment.  (D.I. 38)

II.  BACKGROUND

In 1983, plaintiff was admitted to DCC; it was noted in his admission records that he had occasional stomach pain and prostate problems.[1]  (D.I. 38, Ex. D)  From 1998 through 1999, plaintiff was seen by a physician a total of fifteen times (id.) and he was repeatedly prescribed Tagament, Titralac, Mylicon and/or Bentyl.  (Id.)  An x-ray of his abdomen in 1998 did not show any evidence of a bowel obstruction.  (Ex. Q)  On December 3, 1999, plaintiff submitted a "sick call slip" stating that he was "having trouble urinating and [was] passing blood through [his] bowels . . . [a]lso having trouble digesting food."  (Id.)  Plaintiff was subsequently examined on December 3.  (Id.)

Plaintiff was seen by a physician four more times before October 18, 2000, when he submitted a sick call slip stating that he had a stomach virus.[2]  (Id., Ex. E)  On October 29, plaintiff was examined by a physician and had "no complaints."  (Id., Ex. F)  On November 8, 2000, plaintiff submitted a sick call slip stating that he was "very sick" and could not "digest foods."  (Id.)  In this call slip, plaintiff asserted that this was the last request he would make before "writing letters and making phone calls."  (Id.)  Plaintiff was subsequently examined, but

---

[1]Plaintiff was diagnosed with an enlarged prostrate that was treated with Minipress.  (D.I. 33, Ex. D)

[2]Plaintiff alleges that he submitted a sick call slip on or about October 30, 2000, complaining of an ongoing stomach problem.  (D.I. 2)  It is not clear whether this is the sick call slip he was referring to or not.

the diagnosis is illegible.  On November 15, 2000, plaintiff was complaining of nausea after eating and inability to have a bowel movement.  (Id., Ex. H)  Two days later plaintiff's blood was drawn for "labs."  (Id.)  On December 8, 2000, an ultrasound of plaintiff's abdomen was taken; everything appeared normal.[3]  (Id., Ex. I)  On January 16, 2001, plaintiff requested that his prescription be renewed; at this time, plaintiff did not indicate any discomfort or concerns.  (Id., Ex. J)  Plaintiff alleges that during the month of January 2001, his condition worsened to such a point that he was unable to eat.  (D.I. 2)  On January 25, an EKG was done and plaintiff's blood was drawn again.  (D.I. 33, Ex. J)  On January 31, 2001, plaintiff was diagnosed with possible appendicitis.  (Id.)  According to plaintiff, this is the day his appendix ruptured.  (D.I. 2)  The next day plaintiff was sent to St. Francis where he underwent an appendectomy.  (D.I. 44)

Dr. Mammen, plaintiff's surgeon, noted that plaintiff was "ill-looking," "febrile" and possibly dehydrated upon arriving at St. Francis.  (Id.)  St. Francis diagnosed plaintiff as having "severe acute transmural appendicitis" or "gangrenous appendicitis."  (Id.)  Plaintiff alleges that he subsequently had

---

[3] Plaintiff contends that from October to December, he put in numerous sick call slips, one of which resulted in an examination by defendant Nurse Dottie who allegedly told him nothing was wrong with him and another indicated that plaintiff would receive further testing.

3

a second operation to remove part of his large intestine which had become infected after his appendix ruptured, as well as a third operation to remove peritonitis (caused by the ruptured appendix) from his stomach. (Id.) The medical records from St. Francis indicate that ten days after the initial surgery, plaintiff underwent a second abdominal surgery. (Id.)

Plaintiff returned to DCC from St. Francis on March 8, 2001; he had no complaints of pain, his sutures were still intact and did not appear to be infected. (D.I. 38, Ex. K) By March 12, 2001, despite complaints of "gas build up," plaintiff was requesting to be discharged from the infirmary, back into the general population; plaintiff was kept in the infirmary until approximately March 15. (Id., Ex. L) He was examined by doctors again on March 19. (Id.) On March 29, plaintiff submitted a sick call slip complaining of pain in his surgical incision.[4] (Id., Ex. M) On April 23, plaintiff had an annual medical examination, during which he denied having a hernia and his abdomen was not examined. (Id.) On May 28, 2001, plaintiff submitted another sick call slip with complaints unrelated to his medical incision. (Id.) On June 21, however, plaintiff submitted a slip asserting that he was having trouble with the incision. (Id., Ex. N) Upon examination, it was noted that

---

[4]Based on the record, it is not clear whether this complaint ever resulted in an examination.

4

plaintiff's umbilicus bulged when he tensed his abdomen; the examiner requested approval for plaintiff to have a hernia belt and advised him not to strain. (Id.) On July 16, 2001, plaintiff submitted another sick call slip stating that his intestines were protruding through his incision, and that the incision was getting larger. (Id.) Upon examination, plaintiff was referred for a consultation with a surgeon to determine if surgery was necessary. (Id.) Plaintiff was also diagnosed with an incisional hernia and prescribed a hernia belt to start reducing it; he refused the hernia belt. (Id.) On August 16, plaintiff submitted another sick call slip complaining that his hernia was getting worse; on July 26, he was told he would be scheduled for surgery. (Id., Ex. O) The examining physician indicated that the hernia was large, but reducible. (Id.) Plaintiff saw a surgeon, Dr. Mammen, on September 27, 2001. (Id.) Sometime before October 10, plaintiff was tentatively scheduled for surgery with Dr. Mammen.[5] He eventually had reparative surgery and returned to DDC on November 27, 2001. (D.I. 33, Ex. P)

### III. MOTIONS FOR APPOINTMENT OF COUNSEL

Plaintiff, a pro se litigant proceeding in forma pauperis, has no constitutional or statutory right to representation by counsel. See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981);

---

[5] Plaintiff's surgery had to be approved. (Id., Ex. O)

Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). The "decision to appoint counsel may be made at any point in the litigation, and may be made by a district court sua sponte." Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).

It is within the court's discretion, however, to seek representation by counsel for plaintiff, but this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993)(representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law). After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses.

Tabron, 6 F.3d at 155-57; accord Parham, 126 F.3d at 457; Montgomery v. Pinchak, 294 F.3d at 499.

In this case, plaintiff has shown that he is able to articulate the alleged facts clearly. Plaintiff's allegations coincide with the records provided by CMS and St. Francis; the issue in this case is predominately a legal one and will not be decided by credibility determinations. Plaintiff was able to undertake his own factual inquiry and obtain his medical records from St. Francis Hospital. Plaintiff's case will most likely not require expert testimony. For these reasons, plaintiff's motions for appointment of counsel are denied.

## IV. MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

Defendants Dr. Ivens and Nurse Dottie, through their joint counsel with CMS, have moved to dismiss plaintiff's complaint because they have not been served process. Plaintiff contends that he tried to serve both defendants, but is unable to locate them. Plaintiff further contends that defendant CMS could locate them and serve the complaint upon them.

Pursuant to Federal Rule of Civil Procedure 4(m), plaintiff has 120 days from the date he filed his complaint to serve the complaint on defendants. Upon a showing of good cause for the failure to serve, the court must extend the time for service; the court can, at it discretion, extend the time for service even if

plaintiff has not shown good cause for the delay. Fed. R. Civ. P. 4(m).

Plaintiff's complaint was filed January 16, 2003. On November 13, 2003, the court ordered plaintiff to submit U.S. Marshal 285 forms for all defendants within 120 days of the order. (D.I. 11) Plaintiff submitted the required forms but, because defendants Dr. Ivens and Nurse Dottie were no longer employed by CMS, the U.S. Marshal's Service was unable to serve them and the 285 forms were returned unexecuted. (D.I. 20, 21) Plaintiff has made no further attempts to serve defendants Dr. Ivens or Nurse Dottie or to obtain their addresses; therefore, the motion to dismiss is granted.[6]

## V. MOTION FOR SUMMARY JUDGMENT

Defendant CMS contends that plaintiff has failed to provide evidence that it was deliberately indifferent to his medical needs, or that any indifference was the result of a policy or custom for which it can be liable. (D.I. 38) Plaintiff argues that defendant was indifferent because "a simple blood or urine test would have shown" that he had appendicitis, but defendant

---

[6] Extending the time in which plaintiff could serve these defendants would be of no avail. As stated below, plaintiff's allegations fail on the merits, as he has not put forth sufficient evidence to show a material issue of disputed fact with respect to his claims that defendants were deliberately indifferent.

failed to give him these tests and, as a result, he is suffering and chronically ill.[7]  (D.I, 39)

### A.   Standard Of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R.

---

[7] In his response, plaintiff also asserted that he had not yet been able to obtain his medical records from St. Francis, which he thought would evidence the operations he underwent as a result of defendant's deliberate indifference.  (D.I. 39)  Since filing his response, plaintiff has obtained and filed a copy of those medical records and the records were subsequently considered by the court.  (D.I. 44)

Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

B. Discussion

To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate: (1) that he had a serious medical need; and (2) that the defendant was aware of this need and was deliberately indifferent to it. See West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978); see also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J.1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Id.

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. Monmouth County Corr. Inst. Inmates, 834 F. Supp. at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for a non-medical reason, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. Id. at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. See Estelle, 429 U.S. at 105. While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had

11

knowledge of the risk through circumstantial evidence and "a fact finder may conclude that an . . . official knew of a substantial risk from the very fact that the risk was obvious." Farmer v. Brennan, 511 U.S. 825, 842 (1994).

The law is clear that mere medical malpractice is insufficient to present a constitutional violation. See Estelle, 429 U.S. at 106; Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993). Prison authorities are given extensive liberty in the treatment of prisoners. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); see also White, 897 F.2d at 110 ("Certainly no claim is stated when a **doctor** disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.") (emphasis in original).

In this case, plaintiff has failed to provide evidence that defendants knew of plaintiff's appendicitis and were deliberately indifferent to his needs or point to a disputed issue of material fact with respect to these issues.[8] The record shows that, at the times in question, it may not have been obvious that the plaintiff had a serious medical condition. Plaintiff regularly had stomach problems and was regularly examined by CMS staff.

---

[8] Because the court is granting defendant CMS's motion for summary judgment on these grounds, it does not consider whether plaintiff has sufficiently alleged or proven that the alleged deliberate indifference was caused by a custom or policy.

His stomach problems were treated with medication and abdominal examinations. There is no evidence that plaintiff was prevented from obtaining healthcare, or that his complaints of pain were not taken seriously. Although ultimately plaintiff was diagnosed with appendicitis, there is no evidence that, prior to the diagnosis and his transfer to St. Francis, it was obvious to the defendants that plaintiff was suffering from something more serious than his usual stomach problems. When it did become evident that plaintiff had appendicitis, a serious medical condition, he was examined by CMS and transferred to St. Francis for surgery.

Upon returning from St. Francis, plaintiff was kept in the infirmary for approximately two weeks, during which time he did not complain of any pain or problems with the surgical incision. When the incision began to bother him, there is no evidence to suggest he was not provided medical care. Plaintiff was examined on numerous occasions after he started complaining about his incision and the record shows that his pain subsided. When he was diagnosed with a hernia, he was given a hernia belt, which he refused to use. When his hernia did not improve, he was approved for corrective surgery. Furthermore, the evidence shows that once defendants received notice that plaintiff needed surgery, he received it and supplemental care from defendants.

VI. CONCLUSION

For the reasons stated, plaintiff's motions for appointment of counsel are denied.  (D.I. 30, 34, 41, 47)  Defendants Dr. Ivens and Nurse Dottie's motion to dismiss is granted.  (D.I. 43)  Defendant CMS's motion for summary judgment is granted.  (D.I. 38)